**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEVEN & SHARON MCKENNA**<br>Individually & as a Married Couple<br>633 Clymer Lane<br>Ridley Park, PA 19078 | CIVIL ACTION |
| Plaintiffs, | NO.: |
| v. | |
| **RIDLEY TOWNSHIP d/b/a**<br>**RIDLEY TOWNSHIP POLICE DEPT.**<br>100 MacDade Boulevard<br>Folsom, PA 19033 | **JURY TRIAL OF TWELVE (12) JUORS DEMANDED** |
| And | |
| **CAPTAIN JAMES DOUGHERTY**<br>100 MacDade Boulevard<br>Folsom, PA 19033 | |
| And | |
| **PROSPECT PARK d/b/a**<br>**PROSPECT PARK POLICE DEPT.**<br>720 Maryland Ave.<br>Prospect Park, PA 19076 | |
| And | |
| **CHIEF DAVID MADONNA**<br>720 Maryland Ave.<br>Prospect Park, PA 19076 | |
| And | |
| **JOHN DOES 1-6** | |
| And | |
| **JANE DOES 1-2** | |
| Defendants. | |

# CIVIL ACTION COMPLAINT

## I. INTRODUCTION

1. Plaintiffs, Steven and Sharon McKenna, bring this action to redress the deprivation of their rights, privileges, and immunities secured by the U.S. Constitution and the laws of the United States pursuant to 42 U.S.C. § 1983, as well as those secured under the laws of the Commonwealth of Pennsylvania, as a result of, *inter alia*, Defendants' unreasonable and unlawful forced entry into Plaintiffs' residence on or about the evening of Saturday, July 23, 2022.

## II. JURISDICTION & VENUE

2. Plaintiffs incorporate the foregoing paragraph as if set forth at length herein.

3. Jurisdiction in this Honorable Court is based on a federal question as conferred by 28 U.S.C. §1331. This Honorable Court possesses supplemental jurisdiction over Plaintiffs' state law as conferred by 28 U.S.C. §1367.

4. Venue appropriately lies in this District as the events giving rise to this claim occurred here and at least one (1) Defendant does substantial business within this District.

## II. PARTIES

5. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

6. Plaintiffs, Steven and Sharon McKenna, are adult individuals, a married couple, and citizens of the Commonwealth of Pennsylvania, residing at the above-captioned address.

7. Defendant, Ridley Township doing business as Ridley Township Police Department is a municipality existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with a primary place of business, i.e. the police station, located at the above-captioned address.

8. Defendant, Captain James Dougherty, is an adult individual with a business office located at the above-captioned address. Upon information and belief, Defendant, Captain James Dougherty is the final decision-maker on all policies, practices, and procedures of Ridley Township Police Department.

9. Defendant, Prospect Park doing business as Prospect Park Police Department is a municipality existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with a primary place of business, i.e. the police station, located at the above-captioned address.

10. Defendant, Chief David Madonna, is an adult individual with a business office located at the above-captioned address. Upon information and belief, Defendant, Chief David Madonna is the final decision-maker on all policies, practices, and procedures of Prospect Park Police Department.

11. Defendant, Jane Doe 1, is an adult individual with a business office located at the above-captioned address. Defendant, Jane Doe 1, is named herein in her individual capacity and official capacity as a police officer of the Ridley Township Police Department. At all material times, Defendant, Jane Doe 1, was acting under the color of state law. Defendant, Jane Doe 1, is a female of medium height, with dirty blond hair; badge number unknown. Defendant, Jane Doe 1, appears to be in her 30s. Defendant, Jane Doe 1, was wearing a blue, police officer's shirt with a Ridley Township Police Department badge.

12. Defendant, John Doe 1, is an adult individual with a business office located at the above-captioned address. Defendant, John Doe 1, is named herein in his individual capacity and official capacity as a police officer of the Ridley Township Police Department. At all material times, Defendant, John Doe 1, was acting under the color of state law. Defendant, John Doe 1, is a male

of medium height, large build, with a buzz cut and was wearing glasses; with a badge number *appearing* to be 1512. Defendant, John Doe 1, was wearing a blue, police officer's shirt with a Ridley Township Police Department badge.

13. Defendant, John Doe 2, is an adult individual. Defendant, John Doe 2, is named herein in his individual capacity and official capacity as a police officer with an unknown police department. At all material times, Defendant, John Doe 2, was acting under the color of state law. Defendant, John Doe 2, is a male of above-average height, large build, with light-colored hair, a buzz cut, and was wearing glasses. Defendant, John Doe 2 appears to be in his late 30s or 40s. Defendant, John Doe 2, was wearing civilian clothes with tactical gear identifying himself as police.

14. Defendant, John Doe 3, is an adult individual. Defendant, John Doe 3, is named herein in his individual capacity and official capacity as a police officer with an unknown police department. At all material times, Defendant, John Doe 3, was acting under the color of state law. Defendant, John Doe 3, is a male of medium height, medium build, with dark-colored hair, a buzz cut, and was wearing glasses. It is believed that Defendant, John Doe 3 is not a member of the Ridley Township Police Department. Defendant, John Doe 2 appears to be in his 40s. Defendant, John Doe 3, was wearing a dark blue, police officer's shirt.

15. Defendant, John Doe 4, is an adult individual. Defendant, John Doe 4, is named herein in his individual capacity and official capacity as a police officer with an unknown police department. At all material times, Defendant, John Doe 4, was acting under the color of state law. Defendant, John Doe 4, is a male of above-average height, medium build, with a dark-colored hair, short haircut and was not wearing glasses. Defendant, John Doe 4 appears to be in his 20s or 30s and was in tactical gear.

16. Defendant, John Doe 5, is an adult individual. Defendant, John Doe 5, is named herein in his individual capacity and official capacity as a police officer, believed to be with Prospect Park Police Department. At all material times, Defendant, John Doe 5, was acting under the color of state law. Defendant, John Doe 5, is a male of average height, medium build, and was wearing sun glasses. Defendant, John Doe 5 appears to be in his 30s. Defendant, John Doe 5 was wearing a black police officer's uniform.

17. Defendant, Jane Doe 2, is an adult individual. Defendant, Jane Doe 2, is named herein in her individual capacity and official capacity as a police officer with an unknown police department. At all material times, Defendant, Jane Doe 2, was acting under the color of state law. Defendant, Jane Doe 2, is a female of below-average height, of African-American descent. It is believed that Defendant, Jane Doe 2 is not a member of the Ridley Township Police Department. Defendant, Jane Doe 2appears to be in her 30s. Defendant, Jane Doe 2, was wearing a dark blue, police officer's shirt.

18. Defendant, John Doe 6, is an adult individual. Defendant, John Doe 6, is named herein in his individual capacity and official capacity as a police officer with Prospect Park Police Department. At all material times, Defendant, John Doe 6, was acting under the color of state law. Defendant, John Doe 6, is a male of average height, thin build. Defendant, John Doe 6 appears to be in his 20s or 30s. Defendant, John Doe 6 was wearing a black police officer's uniform.

## III. OPERATIVE FACTS

19. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

20. On the morning of July 23, 2022, Plaintiffs, Steven and Sharon McKenna, traveled out of the county to visit with life-long friends and celebrate their friends' fiftieth wedding anniversary.

21. While celebrating, Plaintiffs received a phone call from a neighbor, informing Plaintiffs that local police had broken down the front door to Plaintiffs' residence, located at 633 Clymer Lane in Ridley Park, PA (the "Plaintiffs' Property"; the dwelling on Plaintiffs' Property will be referred to as "Plaintiffs' Residence").

22. Upon information and belief, Ridley Township Police Department received a report of a shooting at 6**6**3 Clymer Lane in Ridley Park, PA, including information that a victim was laying on the ground in the rear of the 6**6**3 Clymer Lane Property with multiple gunshot wounds.

23. Upon information and belief, officers from Ridley Township Police Department and other local police departments responded to the 6**6**3 Clymer Lane Property and ultimately secured the scene.

24. However, a separate contingent of police officers, i.e. Defendants, instead went to Plaintiffs' Property, which is clearly and visibly marked as "633" directly next to the front door of Plaintiffs' Residence. *See* Exhibit A.

25. While other officers were appropriately responding to the shooting situation, Defendants recklessly and unreasonably approached Plaintiffs' Residence, knocked in their front door, and entered.

26. In fact, even after realizing that they made an "oopsie", i.e. unlawfully entering the wrong house without cause thereby violating Plaintiffs' constitutionally-protected rights, certain Defendants exited and unlawfully re-entered Plaintiffs' Residence thereafter, and even let non-officers enter into Plaintiffs' Residence without authorization.

27. Ultimately, Defendants left Plaintiffs' Property without communicating with Plaintiffs or leaving any information for Plaintiffs upon their return home.

28. To date, Defendants have not contacted Plaintiffs, explained or apologized for their actions, or compensated Plaintiffs for the damage Defendants caused to Plaintiffs' Residence.

29. Prior to 6:54pm on July 23, 2022, Defendant, John Doe 4, initially approached Plaintiffs' Property from the rear and did not discover any gun shot wound victim in the area. Defendant, John Doe 5, likewise did not see or hear any indications that a shooting had just occurred in the vicinity. Nonetheless, Defendant, John Doe 4, failed to communicate to the other Defendants the foregoing.

30. Plaintiffs' Ring Camera captured the following events that occurred on July 23, 2022 at Plaintiffs' Property:

a. At approximately 6:54pm, Defendant, Jane Doe 1 entered onto the Plaintiffs' Property carrying a military-style, assault rifle. Defendant, Jane Doe 1 walked up the front steps to the porch[1] and appeared to make contact with Defendant, John Doe 4, who was in the rear of Plaintiffs' Property. Defendant, Jane Doe 1 returned to the street in front of Plaintiffs' Property.[2]

b. At approximately 6:55pm, Defendant, John Doe 1 walked up the up the front steps to the porch and began pounding on the front door of Plaintiffs' residence, yelling, "Open the door." Defendant, John Doe 1 failed to identify himself or that police were present. Defendants, John Doe 2 and John Doe 3, also approached the front door of Plaintiffs' residence, positioning themselves on either side of the door[3].

---

[1] As Defendant, Jane Doe 1 approached the front door of Plaintiffs' Residence, she could clearly see the "633" marking on the front of Plaintiffs' Residence, next to the front door. *See* Exhibit A.

[2] Upon information and belief, Defendant, Jane Doe 1, also failed to communicate to her fellow officers that there was not any gunshot wound victim in the area in spite of the prior report that a gunshot wound victim, with multiple gun shot wounds, was lying on the ground in the rear of the correct house.

[3] As Defendants, John Doe 1, John Doe 2, and John Doe 3 approached the front door of Plaintiffs' Residence, they could clearly see the "633" marking on the front of Plaintiffs' Residence, next to the front door. *See* Exhibit A.

c. At approximately, 6:56pm, Defendant, John Doe 1 remarked to Defendant, John Doe 2, “this is over the top.”

d. At approximately 6:56pm, an ambulance from Crozer EMS, arriveed and two EMTs exited the vehicle and approached Plaintiffs’ residence. Defendant, John Doe 1 instructed them to go around back of Plaintiffs’ property.

e. Also, at approximately 6:56pm, Defendant, John Doe 5 arrived, approached the front door of Plaintiffs’ residence, and positioned himself next to Defendant, John Doe 3[4].

f. Also, at approximately 6:56pm, Defendant, John Doe 1, began obnoxiously kicking the front door with his boot. Defendant, John Doe 1, still had not identified himself.

g. At approximately 6:57pm, Defendant, John Doe 1 asked Defendant, John Doe 2, “do you have a ram in your car?” Defendant, John Doe 2 responds, “no, but I can kick the door in.” Defendant, John Doe 1 flippantly tells Defendant, John Doe 1, “kick the door in.”

h. At approximately 6:57:20pm, after Defendant, John Doe 2, smashed the Plaintiffs’ front door in with three kicks, Defendants, John Doe 1, John Doe 2, John Doe 3, Jane Doe 1, John Doe 4, finally announced themselves, yelling “police” and “show me your hands” as they unlawfully entered Plaintiffs’ residence with their guns drawn. Defendant, John Doe 1 had his gun pointed outward as he entered Plaintiffs’ Residence.

i. Defendants, Jane Doe 2 and John Doe 6 immediately followed the other Defendant-Officers into Plaintiffs’ residence.

---

[4] As Defendant, John Doe 5, approached the front door of Plaintiffs’ Residence, he could clearly see the “633” marking on the front of Plaintiffs’ Residence, next to the front door. *See* Exhibit A.

j. At approximately 6:58pm, a paramedic in a white shirt from Crozer, opened the front door of Plaintiffs' Residence, and asked, "is the victim inside?"

k. Simultaneously, still at 6:58pm, a voice is heard over the radio – from a different property – stating, "I have the shooter in custody at 663 Clymer Lane". A different voice is heard over the radio, saying, "OK, 663".

l. At approximately 6:58pm, the paramedic stated, "oops, this isn't the wrong house is it? … Oopsie!".

m. At 6:59pm, Defendants, John Doe 1, Jane Doe 2, Jane Doe 1, and John Doe 6 exited the house. However, Defendants, John Doe 2, John Doe 3 and John Doe 4, remained in Plaintiffs' residence despite the realization that they were in the wrong property.

n. While exiting and looking at the damage to Plaintiffs' residence, Defendant, Jane Doe 2, said, "Oh my god!" Other officers can be seen visibly shaking their heads while smiling at the situation.

o. At 6:59pm, Defendant, John Doe 6 told paramedics that the victim who was shot is at 663 Clymer Lane.

p. At 6:59pm, Defendant, John Doe 1 asked the paramedics, "there's nobody out back?" Defendant, John Doe 1, begins to walk away, and then turned around, asking, "there's not a guy with a bunch of gunshot wounds out back?" Someone said, "there's no one back there" and Defendant, John Doe 1 walked away.

q. At 7:00pm, Defendants, John Doe 2, John Doe 3 and John Doe 4 exited Plaintiffs' property, left the scene, and drove away, leaving Plaintiffs' Residence unsecured.

r. At 7:05pm, Plaintiffs' neighbors began inspecting the Property and then left.

s. At 7:06pm, Defendant, John Doe 4 returned to Plaintiffs' Property and, for a second time, entered Plaintiffs' Residence without cause.

t. At 7:07pm, Defendant, John Doe 3 also returned to Plaintiffs' Property and began speaking with neighbors.

u. At 7:08pm, Defendant, John Doe 4 exited Plaintiffs' Residence, again leaving the Residence unsecured[5].

v. At 7:58pm, Defendant, John Doe 1 and a neighbor approached Plaintiffs' front door again; this time, Defendant, John Doe 1 rang the doorbell.

w. At 7:59pm, a contractor approached Plaintiffs' front door to meet Defendant, John Doe 1.

x. At 7:59pm, Defendant, John Doe 1 again unlawfully entered Plaintiffs' residence. Defendant, John Doe 1 then allowed the contractor and a neighbor to also enter Plaintiffs' residence. The contractor and neighbor then exited Plaintiffs' residence.

y. At 8:00pm, Defendant, John Doe 1 left the residence and got in his vehicle, while the contractor and neighbor re-entered Plaintiffs' residence.

z. At 8:02pm, the neighbor exited Plaintiffs' residence and then the contractor exited thereafter.

aa. At 8:07, the contractor re-entered Plaintiffs' residence with construction materials while Defendant, John Doe 1 continued to sit in his vehicle outside of Plaintiffs' residence.

bb. The contractor continued to freely exit and re-enter Plaintiffs' residence, under the guise of Defendant, John Doe 1's authority, until approximately 8:18pm.

---

[5] It is believed and therefore averred that Defendants, John Doe 3 and John Doe 4, left the area at approximately 7:08pm.

cc. Defendant, John Doe 1 then left Plaintiffs' property at approximately 8:19pm.

31. Following receipt of the phone call from a neighbor, Plaintiffs returned home to find their front door damaged, the interior framing for the door in pieces, and their sense of security and safety destroyed.

32. At no time did Plaintiffs violate any law or regulation, nor were even accused of doing so.

33. At no time did Defendants have any suspicion that Plaintiffs violated any law or regulation; nor did Defendants have any reasonable suspicion or probable cause that a crime had been committed or was ongoing inside Plaintiffs' Residence.

34. Since July 23, 2022, Plaintiffs have learned from neighbors that this incident was far from the first time that Ridley Township Police Department had unlawfully entered into the wrong residence in recent years.

35. Pursuant to Federal Rule of Civil Procedure 11, it is believed and therefore averred that the following allegations will likely have evidentiary support after a reasonable opportunity for discovery:

a. It is believed that discovery will reveal a systematic failure of Ridley Township Police Department to create sufficient practices, and procedures to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

b. It is believed that discovery will reveal a systematic failure of Prospect Park Police Department to create sufficient practices, and procedures to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

c. It is believed that discovery will reveal a systematic failure of Ridley Township Police Department to provide sufficient training to its officers to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

d. It is believed that discovery will reveal a systematic failure of Prospect Park Police Department to provide sufficient training to its officers to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

e. It is believed that discovery will reveal a systematic failure of Ridley Township Police Department to appropriately reprimand its officers who unlawfully enter and search citizens' residences.

f. It is believed that discovery will reveal a systematic failure of Prospect Park Police Department to appropriately reprimand its officers who unlawfully enter and search citizens' residences.

## IV. COUNTS OF ACTION

### COUNT I
**Illegal Entry & Search**
Pursuant to 42 U.S. Code § 1983, et seq., & Pennsylvania State Law
*Plaintiffs v. Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 6, Jane Doe 1, and Jane Doe 2*

36. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

37. On the evening of July 23, 2022, as described in detail above, Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 6, Jane Doe 1, and Jane Doe 2, while acting under the color of state law, forcibly entered into Plaintiffs' residence without a warrant and without a reasonable belief or probable cause that anyone within the residence had committed a

crime or had taken some other action for which arrest or detainment was legal or appropriate, or that a crime had occurred or was ongoing therein, or that a victim therein was in need of assistance.

38. Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 6, Jane Doe 1, and Jane Doe 2's actions were intentional, reckless, and/or showed deliberate indifference to the rights of American Citizens, including Plaintiffs.

39. As a result of Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 6, Jane Doe 1, and Jane Doe 2's actions, Plaintiffs have suffered and continue to suffer emotional distress, anguish, shame, and humiliation, as well as financial loss for the physical damages caused to their residence.

**COUNT II**
**Illegal Entry & Search**
Pursuant to 42 U.S. Code § 1983, et seq., & Pennsylvania State Law
*Plaintiffs v. Defendants, John Doe 1 & John Doe 4*

40. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

41. On the evening of July 23, 2022, as described in detail above, Defendants, John Doe 1 and John Doe 4, while acting under the color of state law, re-entered Plaintiffs' Residence without a warrant and without a reasonable belief or probable cause that anyone within the residence had committed a crime or had taken some other action for which arrest or detainment was legal or appropriate, or that a crime had occurred or was ongoing therein, or that a victim was in need of assistance.

42. In fact, Defendant, John Doe 1 also allowed other non-police-officers entry into Plaintiffs' Residence without authorization.

43. Defendants, John Doe 1 and John Doe 4's actions were intentional, reckless, and/or showed deliberate indifference to the rights of American Citizens, including Plaintiffs.

44. As a result of Defendants, John Doe 1 and John Doe 4's actions, Plaintiffs have suffered and continue to suffer emotional distress, anguish, shame, and humiliation.

## COUNT III
**Failure to Intervene**
Pursuant to 42 U.S. Code § 1983, et seq., & Pennsylvania State Law
*Plaintiffs v. Defendants, John Doe 5 & Jane Doe 1*

45. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

46. On the evening of July 23, 2022, as described in detail above, Defendants, John Doe 5 and Jane Doe 1, knew they were responding to a scene involving a victim having multiple gunshot wounds who was reported to by lying on the ground behind a residence, specifically, the 6**6**3 Clymer Lane Property.

47. Prior to the unlawful entry of certain Defendants into Plaintiffs' Residence, Defendants, John Doe 5 and Jane Doe 1 had actual knowledge that there was not a gunshot wound victim in the rear of Plaintiffs' Residence. As a result, Defendants, John Doe 5 and Jane Doe 1 knew that they were outside the wrong residence.

48. Nonetheless, Defendants, John Doe 5 and Jane Doe 1 failed and/or refused to intervene in certain Defendants' unlawful entry and search of Plaintiffs' Residence despite a realistic and reasonable opportunity to intervene in the moments prior to entry following their notice of no gunshot wound victim.

49. In fact, Defendant, Jane Doe 1, participated in the unlawful entry.

50. Had Defendants, John Doe 5 and Jane Doe 1 acted appropriately to intervene, Plaintiffs would not have suffered the deprivation of their rights, privileges, and immunities secured by the U.S. Constitution and the laws of the United States pursuant to 42 U.S.C. § 1983 described herein.

**COUNT IV**
**Failure to Intervene**
Pursuant to 42 U.S. Code § 1983, et seq., & Pennsylvania State Law
*Plaintiffs v. Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 5 & Jane Doe 1*

51. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

52. On the evening of July 23, 2022, as described in detail above, Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 5 and Jane Doe 1, knew they were responding to a scene at 6**6**3 Clymer Lane.

53. Nonetheless, prior to the unlawful entry of certain Defendants into Plaintiffs' Residence, Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 5 and Jane Doe 1 saw the "633" address clearly and visibly indicating that they were at 633 Clymer Lane, i.e. the wrong location.

54. Nonetheless, Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 5 and Jane Doe 1 failed and/or refused to intervene prior to the unlawful entry and search of Plaintiffs' Residence despite a realistic and reasonable opportunity to intervene in the moments prior to entry following their observation of the "633" address.

55. In fact, Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 5 and Jane Doe 1 participated in the unlawful entry.

56. Had Defendants, Defendants, John Doe 1, John Doe 2, John Doe 3, John Doe 5 and Jane Doe 1 acted appropriately to intervene, Plaintiffs would not have suffered the deprivation of their rights, privileges, and immunities secured by the U.S. Constitution and the laws of the United States pursuant to 42 U.S.C. § 1983 as described herein.

**COUNT V**
**Trespass**
*Plaintiffs v. Defendants, John Doe 1 & John Doe 4*

57. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

58. Defendants, John Doe 1 and John Doe 4 re-entered into Plaintiffs' Residence with actual

knowledge that they had no right, license, or privilege to be inside the Residence to the detriment of Plaintiffs' sense of security and safety.

59. At the time Defendants, John Doe 1 and John Doe 4 re-entered into Plaintiffs' Residence, Defendants, John Doe 1 and John Doe 4 no longer were serving the interests of their employer, but instead were acting, at least in part, in self-interest.

**COUNT VI**
***Monell Liability***
Pursuant to 42 U.S. Code § 1983, et seq.
*Plaintiffs v. Ridley Township & Prospect Park*

60. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

61. Pursuant to Federal Rule of Civil Procedure 11, it is believed and therefore averred that the following allegations will likely have evidentiary support after a reasonable opportunity for discovery:

a. It is believed that discovery will reveal a systematic failure of Ridley Township Police Department to create sufficient practices, and procedures to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

b. It is believed that discovery will reveal a systematic failure of Prospect Park Police Department to create sufficient practices, and procedures to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

c. It is believed that discovery will reveal a systematic failure of Ridley Township Police Department to provide sufficient training to its officers to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

d. It is believed that discovery will reveal a systematic failure of Prospect Park Police Department to provide sufficient training to its officers to ensure that its officers respond to the correct address when responding to incidents, particularly when officers are entering residences without a subpoena.

e. It is believed that discovery will reveal a systematic failure of Ridley Township Police Department to appropriately reprimand its officers who unlawfully enter and search citizens' residences.

f. It is believed that discovery will reveal a systematic failure of Prospect Park Police Department to appropriately reprimand its officers who unlawfully enter and search citizens' residences.

62. As a result of the foregoing failures, Plaintiffs suffered the deprivation of their rights, privileges, and immunities secured by the U.S. Constitution and the laws of the United States pursuant to 42 U.S.C. § 1983 as described herein.

## IV. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Steven and Sharon McKenna, by and through their undersigned counsel, respectfully requests this Honorable Court enter judgment in their favor and against Defendants, individually, jointly and severally, in an amount in excess of seventy-five thousand dollars ($75,000), plus such other and further relief as this Honorable Court deems necessary and just, including:

a. Compensatory Damages, including actual damages for financial and physical injuries to Plaintiffs and their residence, including physical damage and emotional distress;

b. Statutory Damages;

c. Punitive Damages;

d. Attorneys' fees and expenses, costs of suit, and equitable relief; and,

e. Injunctive relief, including educational training.

Respectfully Submitted,

**WEISBERG LAW**

*/s/ L. Anthony DiJiacomo, III*
Matthew B. Weisberg
Attorney Id. No. 85570
L. Anthony DiJiacomo, III
Attorney Id. No.: 321356
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880

**SCHAFKOPF LAW, LLC**

*/s/ Gary Schafkopf*
Gary Schafkopf
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-283-1334

*Attorneys for Plaintiffs*

# EXHIBIT A



welcome
TO THE
McKennas
633
ring